IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANK HOHN, ) | |
| ) | |
| Plaintiff, ) | 8:05CV552 |
| ) | |
| v. ) | |
| ) | |
| BNSF RAILWAY COMPANY, ) | MEMORANDUM AND ORDER |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on a motion for summary judgment filed by the defendant BNSF Railway Company (hereinafter, "the Railroad"), Filing No. 48. This is an action for disability discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101, and unspecified federal and state whistle-blower protection statutes.

Plaintiff Frank Hohn alleges that he was removed from his job because of a disability shortly after he made a safety complaint against the Railroad. In its motion for summary judgment, the Railroad argues that Hohn's claims of retaliation and violation of the Nebraska Fair Employment Practices Act are time-barred; that Hohn has failed to exhaust administrative remedies with respect to his claims of disparate treatment or failure to accommodate under the ADA; that Hohn is not a qualified individual with a disability within the meaning of the ADA; and that the undisputed evidence shows that the Railroad can provide no reasonable accommodation that would allow Hohn to work safely in his position as a locomotive machinist.

**I. BACKGROUND**

The uncontroverted evidence establishes that the Railroad operates mechanical facilities in Alliance, Nebraska. Hohn was hired by the Railroad on December 8, 1997, to

work as a locomotive machinist in the Railroad's Alliance, Nebraska, facility. The duties of a locomotive machinist include inspecting, testing, maintaining and servicing locomotives and locomotive components, using and operating appropriate tools and equipment. Filing No. 50, Index of Evidence ("Evid."), Exhibit ("Ex.") 1, Declaration of Calvin Hobbs ("Hobbs Decl.") at 3-4. Hohn was assigned to the C Building of the Alliance facility. Filing No. 51, Index of Evidence II, Exs. 4A & 4B, Deposition of Frank Hohn ("Hohn Dep.") at 142. Heavier locomotive repairs such as changing out the turbocharger, radiator replacement, and air compressor replacement are done in C Building. *Id.* at 37. The C Building is described as a big garage where as up to fifteen locomotives can be parked. *Id.* at 45-46. Work platforms can be rolled to and attached to locomotives in the C building, and the floors in the building are somewhat uneven. *Id.* at 45, 60. Calvin Hobbs was the shop foreman of the C building at the time of the incidents at issue. Hobbs Decl. at 1.

In December 2002, Hohn injured his wrist while off duty and was off work for eight weeks until he was able to return to work without restrictions. Hohn Dep. at 93. In the fall of 2003, Hohn requested a lighting adjustment in the diesel pit. *Id.* at 142. On December 11, 2003, Hohn fell on a slippery surface at work and fractured his wrist. *Id.* at 115. Hohn was put on light duty while recovering from the injury. *Id.* at 132-33. Hohn was released to work without restriction in late March or early April 2004. *Id.* at 142. On April 19, 2004, Hohn called the Railroad's internal safety hotline about instructions from a foreman that Hohn contended were unsafe. *Id.* at 156-57.

Hohn's supervisors relayed concerns about Hohn's vision to Calvin Hobbs in April 2004. Hobbs Decl. at 2. Hobbs put Hohn on medical leave and requested that Hohn get his vision checked. *Id.*; Ex. 1D. Hohn was examined by Dr. Robert Dietrich, an optometrist, on May 10, 2004. Hohn Dep. at 182-85; Filing No. 51, Index of Evid., Ex. 4C,

2

Deposition of Robert C. Dietrich, O.D. ("Dr. Dietrich Dep.") at 14, 24.  Dr. Dietrich diagnosed Retinitis Pigmentosa.  *Id.* at 14.  Retinitis Pigmentosa is a progressive, degenerative eye disease resulting in tunnel vision, night blindness, and eventual blindness.  *Id.* at 17-18.  In May 2004, Hohn's field of vision was 15 degrees in one eye and 18 degrees in the other.  *Id.* at 17, 25.

Dr. Dietrich placed a number of restrictions on Hohn to return to work.[1]  *Id.*, Ex. 1E, Dietrich Fitness for Duty Form.  Dr. Sharon Clark, a Field Medical Officer in the Railroad's Medical and environmental Health Division, concurred in the restrictions.  *Id.*, Ex. 3, Declaration of Sharon Clark ("Dr. Clark Decl.") at 2; Ex. 3B, Dr. James Lawler Fitness for Duty Form.  Hohn disagrees with the restrictions and does not restrict himself in his everyday activities to the extent recommended by Dr. Dietrich.  Hohn Dep. at 92-93; Filing No. 50, Index of Evid., Ex. 6, Plaintiff's Response to Request for Admission No. 27.  Hohn has continued to drive a motor vehicle.  Hohn Dep. at 5-9, 49-50.  Hohn is presently being treated by a naturopath with vitamin supplements.  Hohn Dep. at 188.  Dr. Dietrich also recommended nutritional treatment.  Dr. Dietrich Dep. at 23.

Hohn sought the services of the Nebraska Commission for the Blind and Visually Impaired ("Commission for the Blind") in order to cope with his situation.  *Id.*, Dep. Ex. 6.  At the suggestion of the Commission for the Blind, Hohn requested a field test to demonstrate that he could perform the job.  Filing No. 50, Ex.3, Dr. Clark Decl. at 2-3; Filing No. 78, Index of Evid., Ex. U, Declaration of Dan Hill ("Hill Decl.") at 2-3.  Hohn also requested a transfer to the D building, or transfer to different duty, or that he be furnished a "work partner."  *Id.,* Ex. O, Letter from Hohn to Dr. Clark.  Dr. Clark denied Hohn's

---

[1] Dr. Dietrich's restrictions were no walking on uneven surfaces, no operating vehicles or machinery, no climbing on ladders or scaffolding, frequent working at desk or computer, and no tasks requiring visual peripheral field exceeding 15 degrees.

3

requests. Dr. Clark Decl. at 2; Filing No. 78, Index of Evid., Exs. Q, R, and S, Letters from Clark to Hohn. Calvin Hobbs would have allowed such a field test if it had been cleared by the Railroad's medical and legal departments. *Id.,* Ex. D, Hobbs Dep. at 72-73. Union officials, safety officials, supervisors, and a representative from the Commission for the Blind would have been present at such an evaluation. Filing No. 77, Index of Evid., Ex. G, Deposition of Angela Bailey, ("Bailey Dep.") at 53-57.

Angela Bailey, former regional medical manager for the Railroad, testified that she conducted five or six field evaluations each year to determine whether an employee with medical restrictions could safely return to work. *Id.* at 1-22, 26. Bailey testified that she believes that Hohn should have been given an opportunity to participate in a field evaluation/work site evaluation. *Id.* at 55. She attempted to convince Dr. Clark to lift the restrictions to allow the evaluation. *Id.* Dan Hill, a vocational rehabilitation counselor with the Commission for the Blind, testified that he believed that Hohn could have returned to work safely, with certain accommodations. Hill Decl. at 2-4.

Although the evidence suggests that collective bargaining agreements may limit the Railroad's flexibility with respect to the creation of other positions for Hohn, it has not been shown that the contracts would preclude any accommodation. Filing No. 50, Index of Evid., Ex. 6, Declaration of Clyde W. Hodgson ("Hodgson Decl.") at 3-4. Calvin Hobbs concluded that the restrictions imposed on Hohn could not be accommodated in any machinist position in the Alliance facility because the essential functions of the machinist position would violate each of the restrictions imposed by Dr. Dietrich. Hobbs Decl. at 4-5. Hobbs also believed that to allow Hohn to work in D Building it would violate the restrictions. *Id.* at 5. Hohn applied for a Machinist Relief position in September 2006.

Hodgson Decl. at 4. He was not offered the position because he was on medical leave. *Id.* at 5.

Hohn filed a complaint of discrimination with the NEOC and EEOC in August 2004. Filing No. 51, Index of Evid., Ex 4E, Plaintiff's Response to Request for Admission No. 25. The NEOC made a finding of no reasonable cause on August 1, 2005. Hohn received a copy of the decision of the NEOC on August 4, 2005. *Id.,* Plaintiff's Response to Request for Admissions, No. 26. Hohn received a "right to sue" letter from the EEOC on September 23, 2005. Filing No. 78, Index of Evid., Ex. W, EEOC Notice and Determination of Rights. Hohn filed his Complaint in this action on December 20, 2005. (Filing No. 1).

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *McAllister v. Transamerica Occidental Life Ins. Co.,* 325 F.3d 997, 999 (8th Cir. 2003)*.* When making this determination, the court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, the court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986). Summary judgment should

5

seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 829 (8th Cir. 2001).

### B. ADA Claims

#### 1. Discrimination/Failure to Accommodate

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must establish (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability. *Heisler v. Metropolitan Council,* 339 F.3d 622, 627 (8th Cir. 2003) (*quoting Dropinski v. Douglas County,* 298 F.3d 704, 706-07 (8th Cir. 2002)).

Determination of whether a disabled employee is qualified to perform an essential function of the job is a two-fold inquiry, asking: (1) whether the employee meets the necessary prerequisites for the job, such as education, experience, and training and (2) whether the employee can perform the essential job functions, with or without reasonable accommodation. *EEOC v. Convergys Customer Mgmt. Group, Inc.,* 491 F.3d 790, 795 (8th Cir. 2007).

Essential functions are the fundamental job duties but not the marginal functions of a particular job. *Rehrs v. Iams Co.,* 486 F.3d 353, 356 (8th Cir. 2007); 29 C.F.R. § 1630.2(n)(1). An employer has the burden of showing a particular job function is an essential function of the job. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1113 (8th Cir. 1995); *Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 680 (8th Cir. 2001) (stating

6

that "[a]lthough an ADA plaintiff retains the ultimate burden of proving that he is a qualified individual, an employer who disputes the plaintiff's claim he can perform the essential functions must put forth evidence establishing those functions.").

Whether or not a function is essential is a fact-specific inquiry. 29 C.F.R. § 1630.2(n); *see also Hall v. United States Postal Serv.,* 857 F.2d 1073, 1079 (6th Cir.1988) ("Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved."). Evidence of whether a particular function is essential includes, but is not limited to, (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. *Benson,* 62 F.3d at 1113*; Heaser v. Toro Co.,* 247 F.3d at 831 (8th Cir. 2001); 29 C.F.R. § 1630.2(n)(3).

Whether an accommodation is reasonable is also a question of fact to be decided by a jury. *Fjellestad,* 188 F.3d at 957; *Jankowski Lee & Assoc. v. Cisneros,* 91 F.3d 891, 896 (7th Cir.1996). The scope of reasonable accommodation may include:

> [J]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B) (emphasis added). There is no precise test for what constitutes a reasonable accommodation, but an accommodation is unreasonable if it requires the

employer to eliminate an essential function of the job. *EEOC v. Convergys Mgmt. Group,* 491 F.3d at 796.

Employers and employees share responsibility to resolve accommodation requests. *Id.* A disabled employee must initiate the accommodation-seeking process by making his employer aware of the need for an accommodation. *Id.* Additionally, the employee must provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation. *Id.* Once the employer is made aware of the legitimate need for an accommodation, "the employer must 'make a reasonable effort to determine the appropriate accommodation.'" *Id.* (*quoting Cannice v. Norwest Bank Iowa N.A.,* 189 F.3d 723, 727 (8th Cir. 1999)). "'This means that the employer should first analyze the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations.'" *Id.* (quoting *Cannice,* 189 F.3d at 727). Employers are required to "make a good faith effort to seek accommodations." *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 954 (8th Cir.1999). This division of responsibility is "only logical, as an employee will typically have better access to information concerning his limitations and abilities whereas an employer will typically have better access to information regarding possible alternative duties or positions available to the disabled employee." *EEOC v. Convergys,* 491 F.3d 790. (*quoting Rizzo v. Children's World Learning Ctr., Inc.,* 173 F.3d 254, 266 (5th Cir.1999).

To establish that an employer failed to participate in an interactive process, a disabled employee must show: (1) the employer knew about the employee's disability; (2) the employee asked for a reasonable accommodation or assistance related to his disability; (3) the employer did not make a good faith effort to assist the employee in seeking an accommodation; and (4) the employee could have been reasonably

8

accommodated but for the employer's lack of good faith. *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1021 (8th Cir. 2000). The question of good faith is generally a question for the jury. *See Convergys,* 491 F.3d at 797 (involving defense of good faith to preclude an award of compensatory damages for emotional distress).

An employer has an affirmative defense to a charge of discrimination for qualification standards that deny job benefits to individuals with disabilities if the standards are "shown to be job-related for the position in question and . . . consistent with business necessity." 42 U.S.C. § 12113(a). Such standards may include "a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Under EEOC regulations, the "direct threat" defense is applicable whether the worker's disability poses a threat to his own safety or to the safety of others. *Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 78 (2002) (*quoting* 29 C.F.R. § 1630.15(b)(2) (2001)). The burden is on the employer to prove the "direct threat" affirmative defense. *Id. (*noting that it is an affirmative defense); *EEOC v. Wal-Mart Stores, Inc.,* 477 F.3d 561, 571-72 (8th Cir. 2007) (noting that the plaintiff is not required to prove that he or she poses no risk). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended." *Chevron,* 536 U.S. at 78 (*quoting* 29 C.F.R. § 1630.2(r)).

### 2. Retaliation

The ADA also provides that "no person shall discriminate against any individual because such individual has opposed any act or practice <u>made unlawful by this chapter</u> or

9

because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (emphasis added). Without direct evidence of a retaliatory motive, retaliation claims (whether under Title VII, the ADA, or the ADEA) are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007). Under that framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. *Id.* If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a nonretaliatory reason for the adverse employment action. *Id.* If the defendant can show a legitimate, nonretaliatory reason for its actions, the burden returns to the plaintiff who is then obliged to present evidence that (1) creates a question of fact as to whether defendant's reason was pretextual; and (2) creates a reasonable inference that defendant acted in retaliation. *Id.*

"An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) (alteration in original). A termination two weeks after a claim of discrimination is "close enough to establish causation in a prima facie case." *Peterson v. Scott County*, 406 F.3d 515, 525 (8th Cir. 2005).

### C. Nebraska Fair Employment Practices Act

The NFEPA prohibits an employer from discharging or harassing an individual "because of such individual's race, color, religion, sex, disability, marital status, or national origin." Neb. Rev. Stat. § 48-1104(1). Disability discrimination claims under NFEPA are analyzed using the same framework as claims brought under the ADA. *See Orr v. Wal-Mart Stores, Inc.,* 297 F.3d 720, 723 (8th Cir.2002).

Under the NFEPA, a judicial action must be brought within a specified time after receipt of notice of the applicable agency's action on the charges. *See* Neb. Rev. Stat. § 48-1120.01.[2] The NFEPA's time requirements, however, apply to the filing of an action in Nebraska courts, not federal court. Whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States district court if the court has jurisdiction under the Constitution and laws of the United States. *Poitra v. Demarrias,* 502 F.2d 23, 26-27 (8th Cir.1974) (*quoting Markham v. City of Newport News,* 292 F.2d 711, 713-716 (4th Cir.1961). The court has pendent jurisdiction over a state law claim under 28 U.S.C. § 1367 when it has original jurisdiction over at least one claim in the complaint. *Myers v. Richland Co.,* 429 F.3d 740, 749 (8th Cir. 2005). Original jurisdiction is equivalent to independent federal subject matter jurisdiction. *Id.*

---

[2]That statute provides:

> The deadline for filing an action directly in the district court is ninety days after the complainant receives notice of the last action the commission will take on the complaint or charge. When entering the last action on the complaint or charge, the commission shall issue written notice of such ninety-day deadline to the complainant by certified mail, return receipt requested. The last action on the complaint or charge includes the issuance of the final order after hearing, the determination of reasonable cause or no reasonable cause, and any other administrative action which ends the commission's involvement with the complaint or charge.

Neb. Rev. Stat. § 48-1120.

11

In order to exhaust administrative remedies under the ADA, a plaintiff must first timely file an administrative charge with the EEOC before bringing suit in federal court. 42 U.S.C. § 2000e-5(e); *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols*, 154 F.3d at 887.

Nebraska's whistle-blower statute is part of the NFEPA. *See* Neb. Rev. Stat. 48-1114 (making it unlawful for an employer to discriminate against an employee for either the employee's opposition to an unlawful practice of the employer or the employee's refusal to honor an employer's demand that the employee do an unlawful act).

**III.    ANALYSIS**

The court rejects the Railroad's assertions that Hohn's claims under the Nebraska Fair Employment Practices Act are time-barred or that Hohn has failed to exhaust administrative remedies with respect to his claims of disparate treatment or failure to accommodate under the ADA. The evidence shows that Hohn filed his complaint in this action within ninety days of the receipt of his right-to-sue letter form the EEOC on September 23, 2005. Hohn's claim that the Railroad failed to accommodate his disability is sufficiently set forth in the charge of discrimination.

With respect to the merits of Hohn's ADA and NFEPA claims, the parties do not dispute that Hohn (1) has a disability under the ADA, (2) suffered an adverse employment action, or (3) possessed the requisite skills for the machinist position. The evidence

12

presented to the court shows that there are genuine issues of material fact with respect to the ultimate issue of whether Hahn could perform the essential functions of his job with accommodations. Genuine issues of material fact exist with respect to the essential functions of the position, potential accommodations, the reasonableness of any such accommodations, the direct threat defense, and the Railroad's good faith. Moreover, the Railroad has not met its burden with respect to the direct threat defense at this time. Accordingly, the court finds that the Railroad's motion for summary judgment on plaintiff's claims for disability discrimination and failure to accommodate under the ADA and NFEPA should be denied.

With respect to the retaliation claim, the court finds that the motion for summary judgment should be granted. The uncontroverted evidence shows that Hohn asserts he was retaliated against for making a safety complaint in April 2004. The complaint did not have anything to do with his disability or with rights otherwise protected under the ADA. Accordingly, the act was not a protected activity under the ADA. The provision of the ADA that provides a cause of action for retaliation refers to acts or practices made unlawful <u>by the ADA</u>. Even if Hohn were able to prove the causal connection between his safety complaint and his forced medical leave, the Railroad's retaliation—while arguably not a good business practice and possibly unlawful in other contexts—would not violate the ADA. Evidence of the Railroad's alleged retaliatory conduct remains relevant, however, to other issues in the litigation, such as pretext, motivation, or to rufute the direct threat defense, but it does not provide the basis for a free-standing claim of retaliation under the ADA.

Plaintiff's retaliation claim under the NFEPA fails for the same reason. To the extent that plaintiff asserts he can recover as a "whistle blower" under the NFEPA, he has not shown any adverse employment action connected to his opposition to an unlawful act by

13

the Railroad. Plaintiff has not provided argument or support for his claims under unspecified federal whistle-blower statutes. Accordingly, the court considers those claims abandoned.

IT IS ORDERED:

1. Defendant's motion for summary judgment, Filing No. 48, is granted in part and denied in part.

2. Defendant's motion for summary judgment is granted with respect to the retaliation claim and claims for relief under state or federal "whistle-blower" statutes.

3. Defendant's motion for summary judgment is denied with respect to the plaintiff's claim for disability discrimination and failure to reasonably accommodate.

DATED this 26th day of September, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge