IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRANK HOHN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV552 |
| | ) | |
| v. | ) | |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on defendant BNSF Railway Company's ("BNSF") motion to compel compliance and for sanctions (Filing No. 129). BNSF seeks an order from the Court compelling plaintiff Frank Hohn ("Hohn") to comply with a stipulated agreement between the parties, in which the parties purportedly agreed to appoint "a neutral medical authority" to conduct a physical examination of Hohn pursuant to Appendix I of the Collective Bargaining Agreement between BNSF and Hohn's union (Filing No. 130-2). For the following reasons, the Court finds BNSF's motion should be denied in part and granted in part.

### BACKGROUND

On April 29, 2004, BNSF placed Hohn, a machinist for BNSF, on medical leave and required Hohn have his vision examined to determine if he could safely return to work. After undergoing a vision exam, Hohn's optometrist imposed several restrictions on Hohn's ability to work relating to his vision. Other physicians subsequently agreed to these restrictions. BNSF adopted the restrictions and determined Hohn could not be accommodated in his machinist position.

In September 2007, Hohn presented to BNSF an opinion from a different physician who had evaluated Hohn's vision and who had come to a contrary conclusion from the prior determinations made regarding Hohn's vision. As a result, on December 17, 2007, the parties filed a Joint Motion for Stay of Proceedings and Stipulation (Filing No. 115). This filing stated the following pertinent provisions:

> In support of said joint motion, the parties stipulate and agree to the following:
>
> . . .
>
> 3. That the applicable Collective Bargaining Agreement ("CBA") between [Hohn's union] and BNSF provides in Appendix "I" that when an employee is withheld from service because of a physical condition as a result of examination by a physician and upon presentation of a dissenting opinion as to the employee's condition by a competent physician, [Hohn's union] may make written request for a neutral medical authority. That there are certain time requirements contained within Appendix "I" for invoking the process that BNSF hereby waives, and BNSF agrees that the process available in Appendix "I" of the CBA is still available to Hohn at this time.
>
> . . .
>
> 6. That once the request has been made by [Hohn's union] on behalf of Hohn, for a neutral medical authority evaluation to BNSF, the parties by mutual agreement shall appoint a neutral medical authority who specializes

> in diseases of the retina and low
> vision.
>
> . . .
>
> 9.  That neutral medical
> authority's determination of Hohn's
> fitness to continue in service as a
> machinist for the BNSF shall be
> final and binding on both Hohn and
> BNSF [subject to review].
>
> . . .
>
> 12.  In order to allow the
> process of the neutral medical
> authority set forth in Appendix "I"
> of the CBA to proceed and because
> the process may resolve the issues
> in the case without the need for a
> trial, the parties request a stay
> of the proceedings. . . .

(Filing No. 115, at 1-4).  Counsel for both Hohn and BNSF signed the motion and stipulation.  On December 18, 2007, the Court entered an order granting the motion and staying the case (Filing No. 116).

In the initial motion and stipulation, the parties requested until May 31, 2008, to go through the physical examination procedures detailed in the CBA's Appendix I.  In February of 2008, BNSF made an initial proposal to Hohn's union regarding a potential ophthalmologist in Wyoming who could conduct the examination.  Hohn's union rejected the ophthalmologist and countered by proposing an optometrist in Colorado.  BNSF rejected the optometrist, and countered with a suggestion of two ophthalmologists who worked in the same

practice as the optometrist Hohn's union had suggested.[1]  Hohn responded by proposing the parties use both an optometrist and an ophthalmologist to complete the evaluation, but BNSF found this unacceptable.

By this point, the May 31st extension deadline was nearly exhausted, and the parties filed a second Joint Motion for Stay of Proceedings and Stipulation (Filing No. 117).  In this filing, the parties stated they had "been working diligently to appoint" a neutral medical authority, but also stated "there has been a slight impasse as to exact details about how the medical authority will conduct the review."  Further, the filing stated "[t]he parties believe they will either resolve this impasse in the short term or agree to disagree."  The filing further stated "[i]f the Parties agree to disagree, they will advise this Court and submit this matter for further proceeding consistent with the Docket and by order of this Court."  Again, counsel for both parties signed the filing.

On July 7, 2008, the parties filed a Joint Report Regarding Stay of Proceedings (Filing No. 119).  In this report, the parties notified the Court that their impasse had not been resolved and that "if the parties agree to disagree, they will advise this Court and submit this matter for further proceeding

---

[1] BNSF rejects the notion that an optometrist should be allowed to conduct the examination because optometrists, who are not medical doctors, are not "retinal disease specialists," as required in the parties' joint motion.  (Affidavit of Melanie J. Whittamore-Mantzios, Filing No. 130-1, ¶ 7).

consistent with the Docket and by order of this Court." As before, counsel for both parties signed the report.

According to BNSF, the parties communicated little between August 2008 and September 2009. Pursuant to a Court order (Filing No. 121), the parties filed a Joint Status Report on September 11, 2009 (Filing No. 122). In this report, the parties stated they had been "unable to agree on a neutral medical authority," but were exploring mediation to resolve the case. The parties mediated the case on November 12, 2009, and agreed to choose a physician who specialized in both ophthalmology and occupational medicine to perform the neutral medical evaluation by December 31, 2009. On November 20, 2009, BNSF proposed a physician who specialized in ophthalmology and occupational medicine to perform Hohn's evaluation. However, Hohn rejected this ophthalmologist because Hohn was uncertain as to whether the ophthalmologist would "evaluate the effect of workplace accommodations and recommend adaptions on the job." The Court held a status conference on March 16, 2010, and ordered BNSF to file a motion on whether the Court should enforce the original stipulation the parties filed in Filing No. 115 (Filing No. 126). After receiving submissions from both parties, the Court will rule on the matter.

## ANALYSIS

**A. Motion to Compel**

BNSF asks the Court to compel Hohn to comply with the stipulation the parties filed in Filing No. 115, in which the

parties agreed to follow the procedures outlined in Appendix I. BNSF argues Hohn is obliged to comply with the terms of the stipulation because the stipulation constitutes a currently binding agreement between the parties and because the stipulation was approved by the Court, thus giving the stipulation the "force of a court order." BNSF Brief, Filing No. 131, at 7.

The Court will address the latter argument first. The Court rejects BNSF's characterization that the Court's granting of a stay in this action also had the effect of ordering Hohn to follow through with the Appendix I procedures. In the order, the Court stated: "Pursuant [to the joint motion for stay of proceedings and stipulation (Filing No. 115)], IT IS ORDERED that said motion is granted; this action is stayed." (Order, Filing No. 116.) As is clear from the order's text, the Court merely granted a stay of the case to allow the parties time to attempt to resolve their dispute by a method alternative to judicial review. The order makes no reference as to whether or not the stipulation the parties entered into was binding. While the Court clearly encourages parties to attempt to resolve their legal disputes through methods that preserve judicial economy, the Court's order did nothing more than stay the case.

BNSF's other argument, that the stipulation constitutes a currently binding agreement between the parties, similarly fails. BNSF is correct that parties are generally bound by the agreements they make in court. *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969); *see also* H.D. Warren, *Relief from*

-6-

*Stipulations*, 161 A.L.R. 1161 (1946 & Supp. 2009) (stating stipulations entered into during the course of litigation can have the effect of creating contracts). When determining whether the parties have entered into an agreement during the course of litigation, courts should look to the law of the forum state. *See Enterprise Rent-A-Car Co. v. Rent-A-Wreck of Am., Inc.*, 181 F.3d 906, 909 n.5 (8th Cir. 1999) (applying Missouri law to determine whether the parties entered into a settlement agreement in a case filed in Missouri).

In Nebraska, to create a contract, "there must . . . be a meeting of the minds or a binding mutual understanding between the parties to the contract." *MBH, Inc. v. John Otte Oil & Propane, Inc.*, 15 Neb. App. 341, 352, 727 N.W.2d 238, 249 (2007). So long as the terms are reasonably certain, courts should find a contract has been made even if the terms are not absolutely certain and the contract lacks some of the standard terms found in a formal written contract. *See Davco Realty Co. v. Picnic Foods, Inc.*, 198 Neb. 193, 198, 252 N.W.2d 142, 146 (1977). The Court finds Hohn and BNSF created a contract when they filed their joint stipulation and motion (Filing No. 115), and the reasonably certain terms of this contract required Hohn and BNSF to follow the procedures outlined in Appendix I.

Although the parties created a contract by filing the joint motion and stipulation, the parties modified this agreement. A contract may be modified without any new consideration being given, so long as the parties mutually agree

to the modification before a breach occurs. *Solar Motors, Inc. v. First Nat'l Bank of Chadron*, 249 Neb. 758, 768, 545 N.W.2d 714, 721 (1996); *Havelock Bank of Lincoln v. Bargen*, 212 Neb. 70, 75, 321 N.W.2d 432, 435 (1982). In Filing No. 117, the parties filed a motion seeking to continue the previously imposed stay so that the parties could have additional time to negotiate which neutral medical authority would conduct Hohn's examination, pursuant to Appendix I. The parties *jointly* stated: "If the Parties agree to disagree [regarding the neutral medical authority], they will advise this Court and submit this matter for further proceedings consistent with the Docket and by order of this Court." Filing No. 117, ¶ 7. Similarly, in Filing 119, the parties' status report, the parties *jointly* made an identical statement. The Court finds Filing Nos. 117 and 119 operated to modify any agreement the parties made in Filing No. 115. *See Solar Motors*, 249 Neb. at 768, 545 N.W.2d at 721 ("[I]nstruments made in reference to and as part of the same transaction are to be considered and construed together."). To the extent BNSF's contention is correct that Filing No. 115 bound the parties to utilize the procedures in Appendix I, Filing Nos. 117 and 119 modified that agreement so that the case would return to the Court for adjudication if the parties could not agree on a neutral medical authority. Thus, the Court rejects BNSF's argument that Filing No. 115 currently requires the parties to follow Appendix I's procedures.

The Court similarly rejects any contention by BNSF that the mediation the parties held in November 2009 resulted in an agreement binding the parties to follow the procedures in Appendix I.  While the parties generally state some agreement came out of this mediation for the parties to choose a neutral medical authority specializing in ophthalmology and occupational medicine, there is not enough evidence in the record to apprise the Court with reasonable certainty of the terms of this agreement.  Moreover, even if the mediation agreement's terms were reasonably certain, there is no evidence this agreement has any effect on the modification language found in Filing Nos. 117 and 119.

Finally, BNSF's contention that the Appendix I procedures should be followed because Hohn is more blameworthy for the delay in adjudicating this case is not persuasive.  Suffice to say, neither party has epitomized diligence in prosecuting this case.

**B.   Motion for Rule 35 Examination**

Alternatively, BNSF's motion to compel requests leave to conduct an optical examination of Hohn pursuant to Fed. R. Civ. P. 35 in the event the Court rejected BNSF's motion to compel.  The Court finds BNSF has shown good cause for Hohn to undergo a Rule 35 physical examination.  Therefore, the Court will grant BNSF's motion to the extent it seeks an order requiring Hohn to undergo an optical examination.  Further, the

Court will grant leave to BNSF to designate the examining physician as an expert witness.  Accordingly,

IT IS ORDERED:

1)   BNSF's motion to compel compliance and for sanctions (Filing No. 129) is denied in part and granted in part;

> a.   The parties are not required to fulfill the procedures detailed in Appendix I;
>
> b.   Hohn will undergo an optical examination by a physician of BNSF's choosing at a time and place mutually convenient to the examining physician and Hohn, so long as the examination takes place by **Friday, June 11, 2010**;
>
> c.   The Court grants leave to BNSF to designate the examining physician as an expert witness.

2)   A planning conference with the undersigned will be held on:

**Wednesday, June 16, 2010 at 8:15 a.m.**

in the chambers of the undersigned, Suite 3190, Roman L. Hruska United States Courthouse, 111 South 18th Plaza, Omaha, Nebraska, to plan a schedule for adjudicating the remainder of this case. The parties may participate by phone by notifying Judge Strom's office prior to said date.

DATED this 20th day of May, 2010.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court